IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

FILED
MISSOULA, MT
2007 JUN 5 AM 11 30
PATRICK E. DUFFY
BY _____
DEPUTY CLERK

ALBERT E. INSUA,

    Petitioner,

vs.

WARDEN J. MCDONALD,

    Respondent.

Cause No. CV-05-131-M-DWM-JCL

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PETITION

This matter comes before the Court on Petitioner Albert E. Insua's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Document 1).

## I. FACTUAL AND PROCEDURAL HISTORY

The factual background for this case was set forth in detail in the Court's Order of April 18, 2007 (Document 14) and will not be repeated herein. Procedurally, Insua filed the current petition in this Court on July 29, 2005. The Court initially determined that Insua's petition was a mixed petition and required Insua to elect one of three options on how to proceed. After a change in the law, the Court on October 6, 2005, withdrew its prior Order and stayed this action pending the completion of Insua's appeal of the denial of his petition for post-conviction relief to the Montana Supreme Court. The Montana Supreme Court affirmed the denial of Insua's petition for post-conviction relief on November 8, 2006. On April 18, 2007, this Court issued an Order finding that although claims 1a, 1b, 1c, 2, 3, 4, and 5 appeared to have been exhausted in

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO
DISMISS PETITION / PAGE 1

the state courts, claims 1d, 1e, 6, 7, and 8 appeared to have been procedurally defaulted. Accordingly, the Court required Insua to file a brief showing cause and prejudice, or in the alternative, a fundamental miscarriage of justice excusing the procedural default of grounds 1d, 1e, 6, 7 and 8. (Document 14). Insua complied and filed his reply brief on May 2, 2007. (Document 15).

## II. PETITIONER'S ALLEGATIONS

For ease of analysis the Court will restate Insua's claims as follows:

1. Insua alleges his Sixth Amendment right to counsel was violated because his trial counsel was ineffective for the following reasons:

    a. he did not adequately explain the dangers of representing himself;

    b. he failed to insure that the physician that conducted the rape exam on one of the victims was subpoenaed;

    c. he failed to introduce into evidence the written report on the rape examination;

    d. he failed to subpoena the former prosecutor in the case; and

    e. he did not give any pre-trial information to the defendant.

2. That the trial court violated his Sixth Amendment right to counsel by failing to adequately advise him of the dangers of representing himself.

3. In violation of the Sixth Amendment of the United States Constitution, the state district court infringed upon Petitioner's rights to confrontation and cross examination by improperly limiting Petitioner's cross examination of witnesses. He specifically complains about the trial court's limitation on his examinations regarding racial tension, animosity between

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PETITION / PAGE 2

neighbors, and about a man who lived with one of the victim's family

4. In violation of the Sixth Amendment to the United States Constitution, the state district court infringed upon Petitioner's rights to confrontation and cross examination by improperly limiting Petitioner's closing argument by prohibiting him from arguing that digital penetration would cause trauma.

5. In violation of the Sixth Amendment to the United States Constitution, the state district court infringed upon Petitioner's right to call witnesses on his behalf when it did not allow the examining physician to be called as a witness after the close of his case.

6. In violation of the Sixth Amendment of the United States Constitution, the state purposely suppressed exculpatory evidence when it failed to subpoena the doctor that examined one of the victims and suppressed the doctor's written report.

7. Petitioner's seventh claim restates many of his prior claims but it also includes an argument that the state district court erred in admitting evidence of Petitioner's marijuana use.

8. In his motion to amend his habeas corpus, Petitioner advances a claim of ineffective assistance of appellate counsel. (Document 13).

## III.   DISCUSSION

### A. Procedurally Defaulted Claims

As set forth in the Court's April 18, 2007 Order, Petitioner's ineffective assistance of counsel claims regarding failing to subpoena the former prosecutor and failing to provide pre-trial information to Insua (Claims 1d and 1e), Petitioner's claim that the state purposely suppressed exculpatory evidence when it failed to subpoena the doctor that examined one of the

victims and suppressed the doctor's written report (Claim 6), Petitioner's marijuana claim (Claim 7) and Petitioner's claim of ineffective assistance of appellate counsel (Claim 8) are procedurally defaulted.

Petitioner's ineffective assistance of counsel claims (Claims 1d, 1e and 8) were procedurally defaulted because they were raised for the first time in Insua's appeal of the denial of his petition for post-conviction relief and the Montana Supreme Court does not consider claims raised for the first time on appeal. Insua v. State, 2006 MT 288N ¶3, 149 P.3d 913 (Mont. 2006)(citing DeShields v. State, 2006 MT 58, ¶6, 331 Mont. 329, ¶ 6, 132 P.3d 540, ¶6 (Mont. 2006).

Petitioner's suppression claim (Claim 6) was raised in his petition for post-conviction relief and in his appeal of the denial of that petition.  However, the state district court found that this claim could have been raised on direct appeal and was not.  The claim was therefore procedurally barred pursuant to Mont. Code Ann. § 46-21-105(2).

Petitioner had not presented his marijuana claims (Claim 7) as a federal issue and therefore this claim had not been exhausted and was procedurally defaulted because Petitioner would not be able to return to state court to accomplish exhaustion.

"For the procedural default rule to apply, . . . , the application of the state procedural rule must provide 'an adequate and independent state law basis' on which the state court can deny relief." Park v. California, 202 F.3d 1146, 1151 (9th Cir. 2000) (quoting Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).  If the state court denied relief on an independent and adequate state procedural ground, claims are barred from review in

federal court, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

"Cause" must be a legitimate excuse for the procedural default in the state courts. Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991). "Prejudice" must be actual harm resulting from the alleged constitutional violation. Id. Generally, "cause" for a procedural default exists if the petitioner can show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). Objective factors that constitute cause include interference by officials that makes compliance with the state's procedural rule impracticable, a showing that the factual or legal basis for a claim was not reasonably available to counsel, or constitutionally ineffective assistance of counsel. Id. When the proffered cause itself would state a claim for a constitutional violation, the cause must also meet the exhaustion requirement, just as if it were asserted in the petition. Edwards v. Carpenter, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

Petitioner's brief seeking an exception to procedural default argues that his claims of ineffective assistance of counsel are not procedurally defaulted because, "[a] claim that trial counsel was ineffective for failing to preserve an error for appeal may either be raised on direct appeal (if the claim is based on facts of record) or in post-conviction proceedings (if such claim could not be documented from the record in the underlying case)." (Document 15, pp. 1-2).

However, the procedural default of Insua's ineffective assistance of counsel occurred because he did not raise these issues on direct appeal or in his petition for post-conviction relief.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PETITION / PAGE 5

He only raised these issues on the appeal of the denial of his petition for post-conviction relief. The Montana Supreme Court does not consider claims raised for the first time on an appeal of the denial of a petition for post-conviction relief. Insua v. State, 2006 MT 288N ¶3, 149 P.3d 913 (Mont. 2006)(citing DeShields v. State, 2006 MT 58, ¶6, 331 Mont. 329, ¶ 6, 132 P.3d 540, ¶6 (Mont. 2006). This is an independent and adequate state law basis upon which to dismiss Insua's claims and Insua's arguments to the contrary do not overcome the procedural default of his claims. Insua did not argue the fundamental miscarriage of justice exception. Accordingly, these claims (1d, 1e, 6, 7, and 8) should be dismissed.

B. Analysis of Claims 1a, 1b, 1c, 2, 3, 4, and 5

1. Legal Standard for Evaluating Merits

AEDPA "modifies the role of federal habeas courts in reviewing" habeas petitions. Williams v. Taylor, 529 U.S. 362, 403 (2000)(O'Connor, J., concurring). "The Supreme Court has said that § 2254(d)(1) imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state court decisions be given the benefit of the doubt.'" Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003)(citing Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997) and Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct 357, 360 (2002)(per curiam)).

Following the AEDPA's enactment, 28 U.S.C. § 2254(d) now reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"A state court's decision is 'contrary to' federal law if the state court (1) 'applies a rule that contradicts the governing law' set forth in Supreme Court case authority or (2) applies controlling law to a set of facts that are 'materially indistinguishable' from a Supreme Court decision but nevertheless reaches a different result." Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1169 (9th Cir. 2003)(citing Lockyer v. Andrade, 538 U.S. 63, 73 (2003)). In Williams, the Supreme Court clarified that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." Williams, at 412, 120 S.Ct. 1495.

"A state court's decision is an 'unreasonable application' of federal law if it is 'objectively unreasonable,' which 'requires the state court decision to be more than incorrect or erroneous.' Thus, 'an unreasonable application is different from an incorrect one.'" Id. at 1169-1170 (citing Lockyer, 538 U.S. at 75 and Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850 (2002)).

With regard to factual issues, habeas relief can only be granted if the adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). "As to more debatable factual determinations, the care with which the state court considered the subject may be important." Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997)(en banc) cert. denied 522 U.S. 1008 (1997) overruled on other grounds by Lindh, 521 U.S. 320. Further, AEDPA directs that factual findings of the state court be granted a presumption of correctness that can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Jeffries, 114 F.3d at 1499-1500.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PETITION / PAGE 7

2.  Ineffective Assistance based upon failure to be advised of dangers of representing himself (Claim 1a and Claim 2)

Insua alleges his Sixth Amendment right to counsel was violated because neither his trial counsel (Claim 1a) nor the trial court (Claim 2) adequately advised him of the dangers of representing himself. In analyzing these issues, the Montana Supreme Court correctly identified the relevant Supreme Court authority by citing Faretta v. California 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) for the existence of a right to self-representation. In Faretta, the Supreme Court stated that in order to grant a defendant's request to proceed pro se, there must be a showing that the defendant "knowingly and intelligently" waived his right to counsel.

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, *he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."*

Id. (emphasis added) (quoting Adams v. United States, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).

The Ninth Circuit has also recognized that "a limited exception may exist whereby a district court's failure to discuss each of the elements in open court will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver." United States v. Balough, 820 F.2d 1485, 1488 (9th Cir. 1987). Even if the trial court does not specifically advise a defendant of the dangers and disadvantages of self-representation, the Ninth Circuit "will look to 'the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused' to determine whether the waiver was knowing and intelligent despite the absence of a specific inquiry on the record." Id.; see also Snook v. Wood,

89 F.3d 605 (9th Cir. 1996). "Neither the Constitution nor Faretta compels the district court to engage in a specific colloquy with the defendant." Lopez v. Thompson, 202 F.3d 1110, 1117 (9th Cir. 2000).

In the decision on Insua's direct appeal, the Montana Supreme Court described the state law standard as:

> a trial court is not required to advise a defendant specifically of the dangers and disadvantages of self-representation as long as the court makes inquiry of the defendant to the extent it deems necessary to ensure that the defendant's waiver of counsel is voluntary, knowing and intelligent.

State v. Insua, 2004 MT 14, ¶ 19, 84 P.3d 11, 319 Mont. 254 (Mont. 2004) citing State v. Markuson, 2003 MT 206, ¶ 13, 317 Mont. 43, 75 P.3d 298 (Mont. 2003). Thus, to the extent that this standard ensures that the waiver is made "knowingly and intelligently" as required by Faretta, 422 U.S. at 835, it is not "contrary to" clearly established federal law as determined by the Supreme Court.

The next inquiry then is whether the state holding was objectively unreasonable factually. The Montana Supreme Court made the following factual determination,

> Here, Insua had recently experienced a criminal trial-his trial for criminal manufacture of dangerous drugs-wherein he had personally observed Stenerson's trial work. Insua had participated in jury selection with Stenerson in the sexual assault case, had been present during the suppression hearings in the case, and had taken law enforcement in college. It was apparent that Insua was generally familiar with the criminal trial process. When the court asked if Insua understood the role an attorney played, Insua responded that he did. Insua was also cautioned by the court that Stenerson had extensive experience as a trial attorney and that was "not something [Insua could] just walk into." Further, the court recommended that because Insua would be questioning children who had accused him of molesting them, "it would probably be in [Insua's] best interests to have someone else ask questions of those children rather than have [him] confront those witnesses directly . . . from a strategic point of view."

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PETITION / PAGE 9

Insua at ¶ 21. Ultimately, the Montana Supreme Court found that, "[t]he District Court's questioning and Insua's responses indicate that Insua understood the decision he made and that he made the decision knowingly and voluntarily." Id.. at ¶22.

The state court found that Insua had at least some familiarity with legal matters, he understood the role an attorney played and was specifically advised of the risks surrounding his cross-examining the child victims. Given that the trial court considered the background, experience and conduct of Insua and then determined that Insua's waiver was knowing and intelligent, the state court's finding was a reasonable determination of the facts in light of the evidence presented. Accordingly, this claim should be dismissed.

### 3. Limitation on Cross Examination (Claim 3)

Insua contends that the state district court violated his Sixth Amendment rights under the United States Constitution by improperly limiting his cross-examination of certain witnesses. Petitioner specifies that he was not allowed to ask a number of questions regarding animosity that had developed between Petitioner and the victims' families including racial tension. He also argued that it was improper for the district court to not allow him to ask the mother of one victim about a man that had lived with them and had unsupervised contact with the victim.

The Montana Supreme Court described the questions which were limited as follows:

> Questions with a dubious nexus to the charges against Insua were denied. Insua was not allowed to ask P.L. [father of one of the victims] about being suspected of theft at his former employment, where he got money to buy trading cards or how P.L. felt concerning an incident between Insua and a mutual acquaintance after P.L. stated he did not recall the incident. Insua was barred from asking further questions of J.L., K.L.'s mother, about leaving K.L. in the care of a male family friend, after the court asked Insua to explain the relevancy of his questioning and Insua offered only "there's a possibility that this-this person was involved."

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PETITION / PAGE 10

> Finally, on re-cross examination of D.H. [father of another victim], Insua was not permitted to ask whether D.H. had called Insua a "nigger lover" or about "beating up a cop in California."

State v. Insua, 319 Mont. 254, 262, 84 P.3d 11, 16-17, 2004 MT 14, ¶26 (2004).

Ultimately, the Montana Supreme Court determined that,

> The record reflects that the court did so, permitting Insua to ask a wide variety of questions which might establish a motivation on the part of the victims or their parents to bring a charge against Insua or otherwise challenge their credibility. Questions which were, at best, attenuated, were prohibited. Accordingly, we hold that the District Court did not abuse its discretion in governing Insua's cross-examination.

Id. at 263, 84 P.3d at 17, 2004 MT at ¶ 28.

The United States Supreme Court provides that the Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) ( per curiam) (emphasis in original).

The state district court and the Montana Supreme Court made a factual determination that certain questions in Petitioner's cross-examinations were "attenuated." Given the wide latitude afforded to trial courts to impose reasonable limits on cross-examinations based upon relevance,

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PETITION / PAGE 11

this Court cannot say that this was an unreasonable determination of the issue.

### 4. Closing Argument (Claim 4)

In his federal petition, Insua argues that in violation of the Sixth Amendment to the United States Constitution, the state district court violated his rights to confrontation and cross examination by improperly limiting his closing argument. (Document 1, p. 5). Specifically, he argues that the state district court would not allow him to argue the states' failure to produce evidence.

At trial, the state district court, after reviewing the testimony of a prosecution witness, concluded that the State had offered evidence indicating that physical trauma does not always occur in cases of digital penetration, and that Insua had not countered with any evidence indicating that physical damage would have been expected from such penetration. Therefore the district court instructed Insua that he was not to argue that digital penetration would yield discernible trauma to the victim. Insua was allowed to argue that there was no trauma. However, when he attempted to say that digital penetration would leave some evidence, the Court interrupted his argument.

The Montana Supreme Court relied on state law for the proposition that "a party may not in his or her closing argument discuss or introduce facts not previously proven." Harwood v. Glacier Elec. Co-op., Inc., 285 Mont. 481, 492, 949 P.2d 651, 658 (1997). Ultimately, the Montana Supreme Court found that, "[b]ecause there was no evidence offered to support Insua's claim regarding the absence of physical trauma, the District Court did not abuse its discretion by

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PETITION / PAGE 12

...
restricting his argument." State v. Insua, 319 Mont. 254, 264, 84 P.3d 11, 18, 2004 MT 14, ¶33 (2004).

This Court cannot say that this analysis violates federal law. Like Montana law, Federal law allows a judge to interfere with a closing argument when it states facts outside the record. United States v. Sturgis, 578 F.2d 1296 (9th Cir. 1978). Insua was trying to argue that if there had been penetration there would have been physical evidence of that. However, Insua had not presented any testimony at trial to support that contention. Therefore, the Montana Supreme Court's conclusion that there was no abuse of discretion was not an unreasonable determination of this issue.

### 5. Testimony of Examining Physician (Claim 5)

In his fifth claim for relief, Insua argues that in violation of the Sixth Amendment to the United States Constitution, the state district court infringed upon his right to call witnesses on his behalf when it did not allow the physician who examined one of the victims to be called as a witness after the close of his case. The Montana Supreme Court determined:

> During his defense, Insua had the opportunity to call witnesses, including the physician, to rebut the State's evidence, but did not do so. At the time he requested permission to call the physician, Insua had rested and the trial had progressed to its final stages. At that point, it was clearly in the District Court's discretion to allow Insua to re-open his case, or to allow either party to call further witnesses. We see no abuse of the District Court's discretion, and affirm.

Insua, at ¶37.

"Few rights are more fundamental than that of an accused to present witnesses in his own defense." E.g., Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); In re Oliver, 333 U.S. 257, 68

S.Ct. 499, 92 L.Ed. 682 (1948). In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049 (1973).

Thus, although the right to present witnesses is important, a defendant still must comply with the rules of procedure. Insua did not do so with regard to the examining physician and therefore, the state Supreme Court's analysis does not violate federal law. Therefore, the Montana Supreme Court's conclusion that there was no abuse of discretion was not an unreasonable determination of this issue and this claim should be dismissed.

Accordingly, the Court enters the following:

## RECOMMENDATION

Insua's Claims 1b, 1c, 1d, 1e, 3, 4, 5, 6, 7, and 8 should be **DISMISSED.**

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within twenty (20) days of the date entered as indicated on the Notice of Electronic Filing.[1] A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

---

[1] In prisoner cases, this Court extends the time to object to twenty days in order to take into account the somewhat greater mailing time that is involved in sending documents into and out of a prison facility.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PETITION / PAGE 14

**PETITIONER IS CAUTIONED THAT HE MUST KEEP THE COURT ADVISED OF ANY CHANGE OF ADDRESS AND A FAILURE TO DO SO COULD RESULT IN A DISMISSAL OF THIS CAUSE OF ACTION.**

DATED this 5th day of June, 2007.

_____
Jeremiah C. Lynch
United States Magistrate Judge

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PETITION / PAGE 15